JUN 12 2026 PM 1:42
FILED - USDC - BPT - C

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KATERIN ROSA,

Plaintiff,

v.

NUVANCE HEALTH MEDICAL PRACTICE CT,
INC.,

Defendant.

## COMPLAINT

Pro Se Plaintiff Katerin Rosa[1] hereby alleges for her Complaint the following:

1. This Complaint alleges retaliation in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.* and of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(a)(4).

2. This court has original subject matter jurisdiction over the Complaint pursuant to 28 U.S.C. §§ 1331, 1367.

3. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 because the alleged acts and omissions occurred in the state of Connecticut.

4. Plaintiff Katerin Rosa is an Hispanic woman and experienced Medical Assistant. Her national origin is Honduran/Puerto Rican.

5. Defendant Nuvance Health Medical Practice CT, Inc. ("Nuvance") is a corporation and citizen of the state of Connecticut. Defendant has a business address of 100 Reserve Rd.,

---

[1] A draft of this pleading was written with the help of an attorney in the Federal Pro Se Legal Assistance Program at the Quinnipiac University School of Law.

Danbury, CT 06810.  Defendant has 15 or more employees.  Defendant's registered agent for service is CT Corporation System, 357 East Center St., Ste. 2 J, Manchester, CT 06040-4471.

6. I began working for Defendant as a Medical Assistant/Secretary on or about May 13, 2024.

7. My job duties as a Medical Assistant included assisting a physician by, for example, taking a patient's vital signs, obtaining a patient's history and chief complaint, updating any medication changes in the patient's chart, and performing EKG exams and bloodwork.  My job duties as a Secretary included tasks like checking in and checking out patients, providing patients the appropriate paperwork, making appointments, answering phone calls from patients, and relaying patient messages.

8. Orsa Christie was my supervisor at all relevant times to this complaint.

9. Around the same time I began working for Defendant, two other new employees also starting working as Medical Assistants/Secretaries.  Both had less experience than I had.

10. Defendant required the two new Medical Assistants/Secretaries and me to complete a 90-day onboarding period.

11. I was qualified for my job.  Prior to my employment with Defendant, I worked for about thirteen years as a Medical Assistant for another employer.

12. Due to my experience as a Medical Assistant and the needs of Defendant, Ms. Christie ended my 90-day onboarding period early and authorized me to begin working on my own.

13. After approximately three weeks, Ms. Christie began to assign me a heavier workload. Ms. Christie also instructed me to perform medication injections of certain patients.

14. I did not feel comfortable performing injections because I understood that in the State of Connecticut, Medical Assistants were not allowed to perform injections.

15. One of my coworkers, Cynthia Horton, made discriminatory comments to me about my national origin (Honduran and Puerto Rican) and race (Hispanic).  For example, Ms. Horton said to me of an Hispanic patient, in sum and substance, "Here comes your cousin."  When a Spanish-speaking patient approached, Ms. Horton said to me, in sum and substance, "Here comes your ya-ya family," as a derogatory comment about my national origin and status as a Spanish speaker.  Ms. Horton also referred to Hispanic patients as my "Mexican family," although the patients were not related to me, and I am not of Mexican national origin.

16. I complained about Ms. Horton's discriminatory comments to Ms. Christie, but Ms. Christie brushed off my complaint.

17. I sent an email to Patricia Belisari, a talent acquisition partner for Defendant who had been involved in my hiring.  I asked to speak to Ms. Belisari on the phone, and on or about June 6, 2024, I orally complained to Ms. Belisari about Ms. Christie assigning me a very heavy workload and asking me to perform tasks, like injections, that I believed were inappropriate.  I also complained to Ms. Belisari about Ms. Horton's discriminatory comments to me about my race and national origin.

18. In response to my complaints, Ms. Belisari arranged a Zoom call with Human Resources, herself, and me.  Ms. Belisari also sought and obtained permission from Ms. Christie for me to take a 30-minute break to conduct the Zoom call.

19. On or about June 10, 2024, I joined a scheduled Zoom call with Sandy Alemany (Senior Human Resources Business Partner), Jack Pettit (Senior Human Resources Business Partner), and Ms. Belisari.  The meeting was recorded.

20. I attended the Zoom meeting from my car for privacy.  I again described my complaints about my heavy workload, Ms. Christie's assignment of inappropriate tasks, and Ms. Horton's discriminatory comments, which made my working environment very uncomfortable.

21. After the end of the Zoom meeting, I returned to work.  Approximately twenty minutes later, Ms. Christie called me to her office.  Ms. Christie said, in sum and substance, that she had spoken to her manager and she was aware of my meeting with Human Resources. Ms. Christie expressed her anger at my having spoken to Human Resources rather than having brought my complaints directly to her.  Ms. Christe said, in sum and substance, "I prefer you not to go to Human Resources" and warned me not to "go over [her] head."

22. After my conversation with Ms. Christie on June 10, 2024, Ms. Christie's behavior and demeanor toward me changed dramatically.  For example, Ms. Christie began to ignore me when I greeted her; gave me dark, disapproving looks; and used a sharp and demeaning tone when answering my questions.

23. Prior to my June 10, 2024 Zoom meeting with Human Resources, I had no negative comments in my employee profile.

4

24. Following my June 10, 2024, Zoom meeting with Human Resources, Ms. Christie began adding false, negative notes about my performance in my employee profile. Ms. Christie wrote these notes in retaliation for my having complained to Human Resources and to support my eventual termination.

25. On or about June 10, 2024, Ms. Christie falsely wrote that I "ha[d] been saying things around the office that has the other staff feeling uncomfortable."

26. On or about June 27, 2024, Ms. Christie falsely wrote in my employee profile that I wrote ungrammatical patient notes in patient charts.

27. On or about July 2, 2024, Ms. Christie wrote another note in my employee profile criticizing my grammar ("I sat with Katerin as she work [*sic*] on her messages and she will need monitoring until she has improved.").

28. On or about July 3, 2024, Ms. Christie falsely wrote that she had "areas of concerns" for me, including "active listening, completing tasks accurately and proficiently.")

29. On or about July 11, 2024, Ms. Christie falsely wrote that I had left the refrigerator door open, compromising a patient's sample.

30. On or about July 15, 2024, Ms. Christie falsely wrote that I made a mistake in relaying a patient's test result to a physician.

31. On or about July 24, 2024, Ms. Christie falsely wrote that I "call[ed] the wrong patients in all day."

32. On or about August 12, 2024, Ms. Christie falsely wrote, "Katerin continues to spread discord in the office" and that I made mistakes concerning patients' medication.

33. Following my Zoom meeting on June 10, 2024, I did not receive any follow-up communication from Human Resources concerning my complaints, which they stated they would follow up with me to see how things are going.

34. Cynthia Horton continued to make derogatory comments to me based on my national origin and race.

35. I was terminated on or about August 13, 2024. It was one of the worst days I have experienced. Before I could punch my time card, Ms. Easton brought me to Ms. Christie's office. Ms. Christie advised me, in sum and substance, that my "90 days were up" and that I was terminated because I was not "a great fit here."

36. I asked to retrieve my personal belongings, Ms. Christie sent Ms. Easton to get my belongings for me. Once Ms. Easton left the room, Ms. Christie said to me, in sum and substance, "You did this to yourself."

37. I understood Ms. Christie to be stating that I caused my own termination by complaining to Human Resources.

38. I asked Human Resources why I had not received any follow-up to concerns I raised during my June 10, 2024 Zoom meeting. I also asked why I had not been allowed to complete the 90-day onboarding. I did not receive a response.

39. When I asked Ms. Alemany in Human Resources for a copy of the June 10, 2024 Zoom meeting recording, Ms. Alemany denied having recorded it.

6

40. I complained to Human Resources about my retaliatory termination.  On or about September 7, 2024, Ms. Alemany responded to my complaint, falsely stating that my employment record was marked "eligible for rehire."

41. After my termination, Ms. Christie indicated on my employee profile that I was "no hire" for purposes of future employment by Defendant.

42. Ms. Christie's decision to mark me as "no hire" has the practical effect of precluding me from virtually all employment as a Medical Assistant in Connecticut or New York.

43. Despite applying to numerous positions, I have not been able to find any full-time work as a Medical Assistant since Defendant terminated me.

44. I filed a charge with the CHRO and EEOC alleging discrimination on the basis of race/color, national origin, religion, sex and retaliation on or about January 8, 2025.

45. The CHRO issued a finding of no probable cause.

46. I received a Right to Sue letter from the EEOC.

**FIRST CAUSE OF ACTION: RETALIATION IN VIOLATION OF TITLE VII**

47. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

48. On or about June 6 and June 10, 2024, I engaged in protected activity when I complained about discrimination on the basis of race and national origin to Ms. Belisari and Ms. Alemany.

49. I had a good faith, reasonable belief that the conduct about which I complained was discriminatory because Cynthia Horton made repeated derogatory comments to me about Hispanic and Spanish-speaking patients.

50. Defendant knew about my protected activity.

51. Defendant took adverse action against me by terminating my employment and marking my employee profile as "no hire."

52. The same day that I complained to Human Resources about discrimination, Ms. Christie told me not to complain to Human Resources again and entered the first of several false notes in my employee profile to provide a pretextual basis for my termination.

53. Defendant's actions caused me harm in the form of lost wages and emotional distress.

## SECOND CAUSE OF ACTION: RETALIATION IN VIOLATION OF CFEPA

1. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

2. On or about June 6 and June 10, 2024, I engaged in protected opposition under the CFEPA when I complained about discrimination on the basis of race and national origin to Ms. Belisari and Ms. Alemany.

3. Defendant was aware of my protected activity.

4. Defendant took adverse action against me by terminating my employment and marking my employee profile as "no hire."

5. The same day that I complained to Human Resources about discrimination, Ms. Christie told me not to complain to Human Resources again and entered the first of several false notes in my employee profile to provide a pretextual basis for my termination.

6. Defendant's actions caused me harm in the form of lost wages and emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks this Court to enter a judgment against the Defendant:

a) Granting an injunction ordering Defendant to remove Plaintiff's designation as "no hire;"

b) Back pay and front pay;

c) Compensatory damages;

d) An award of Plaintiff's reasonable costs;

e) Punitive damages; and

f) Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Date: 6|12|2024

Katerin Rosa
Pro se Plaintiff
Address: 239 Houston Bridgeport Ct 06606
Email: KaterinRosa722@hotmail.com
Phone: 203-919-0788

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/26/2026

**To:** Miss Katerin Rosa
239 Houston Ave
Bridgeport, CT 06606
Charge No: 16A-2025-00451

EEOC Representative and email:    DARLAN BASTIDAS
SUPERVISORY INVESTIGATOR
DARLAN.BASTIDAS@EEOC.GOV

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Arlean Nieto
03/26/2026
Arlean Nieto
Acting District Director

**Cc:**
William Ruggiero Esq.
Ogletree Deakins
281 Tresser Boulevard
Stamford, CT 06901

NA NA
761 Main Avenue, Suite 114A
Norwalk, CT 06851

Jessica  Slippen Esq.
Mitchell & Sheahan
999 Oronoque Lane, Suite 203
Stratford, CT 06614


Please retain this Notice for your records.

**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

KATERINA ROSA
COMPLAINANT

CHRO No.    2520282

v.

EEOC No.    16A-2025-00451

NUVANCE
RESPONDENT

**RELEASE OF JURISDICTION**

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business, or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action must be served on the Commission by email at ROJ@ct.gov or, if you do not have access to email at Commission on Human Rights and Opportunities, ATTN: Legal Division, 450 Columbus Boulevard, Suite 2, Hartford, CT 06103, at the same time all other parties are served. **The Commission must be served because it has a right to intervene in any action based on a release of jurisdiction pursuant to Conn. Gen. Stat. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release. Please note that a Right to Sue Letter must be requested directly from the Equal Employment Opportunity Commission (EEOC) in order to file federal claims in federal court.

**DATE:** February 5, 2026

Tanya A. Hughes, Executive Director

Service:
  Complainant: Katerin Rosa (Email - Katerinrosa722@hotmail.com)
  Complainant's Attorney:  Jessica A. Slippen, Esq.
                  (Email – jslippen@mitchellandsheahan.com)
  Respondent's Attorney: William C. Ruggiero, Esq.
                  (Email –will.ruggiero@ogletreedeakins.com)